IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>The Don Luscombe Aviation History Foundation,<br><br>    Debtor. | In Proceedings Under Chapter 7<br><br>Case No. 2:02-bk-18352-SSC |
| In Re<br><br>Paul Douglas Combs,<br><br>    Debtor. | Case No. 2:05-bk-6498-SSC<br>(Jointly Administered) |
| In Re<br><br>Jill Ford, Chapter 7 Trustee of the Paul Douglas Combs Bankruptcy Estate,<br><br>    Plaintiff,<br>vs.<br><br>Robert P. Ollerton and Jane Does Ollerton, husband and wife,<br><br>    Defendants. | Adv. No. 07-ap-00157<br><br>MEMORANDUM DECISION<br><br>(Opinion to Post) |

1

**I. Introduction**

This matter came before the Court on a "Stipulation to Resolve Adversary Proceeding" ("Settlement Agreement") executed by the parties on April 28, 2008, and the Motion seeking approval thereon, filed on April 29, 2008. The Settlement Agreement contemplates 1) the dismissal of Plaintiff Jill Ford's ("Trustee's") claims against Robert Ollerton, the Defendant herein, in Adversary Proceeding 2:07-ap-00157; and 2) the payment of $2,500 to the Trustee by the Defendant.   The Settlement Agreement was properly noticed out with an objection bar date of May 19, 2008. An "Objection to Stipulation And the Motion for Court Approval Dated April 28, 2008" ("Objection") was filed by Paul Douglas Combs, the Debtor herein, on May 16, 2008. The matter was set for hearing on June 17, 2008.  At the conclusion of the hearing, which was attended by the Trustee and her counsel, the Defendant's counsel, and the Debtor, the Court took the matter under advisement. In this Decision, the Court has set forth its findings of fact and conclusions of law pursuant to Rule 7052, Rules of Bankruptcy Procedure.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. (West 2008).

**II. Factual Discussion**

On April 18, 2005, the Debtor, filed his petition for relief under Chapter 11 of the Bankruptcy Code.  On September 15, 2005, his case was converted to one under Chapter 7, and Jill Ford was duly appointed as the Chapter 7 Trustee.  The case was ordered to be jointly administered with the Chapter 7 case of The Don Luscombe Aviation History Foundation, Case No. 02-18352, on September 20, 2005.  The various parties to the cases, including the Plaintiff and Defendant, have been involved in lengthy and protracted litigation over numerous issues since the inception of The Don Luscombe Aviation History Foundation case in 2002.

On March 7, 2007, the Trustee commenced this proceeding against the Defendant.  The Complaint sought relief under Sections 544, 548, and 550 of the Bankruptcy

2

Code, and Section 44-1001 et seq. of the Arizona Revised Statutes, alleging that the Debtor had transferred certain property referred to in the Complaint as "Hangar O-11" to the Defendant for $42,000. Because the Trustee had sold similar property for $96,000, the Trustee believed that the transaction constituted a fraudulent transfer that could be recovered for the benefit of the bankruptcy estate. The Defendant filed a Motion to Extend Time to Answer, and the Court conducted a Rule 7016 Scheduling Conference in the matter on June 13, 2007.[1] At that time, the Court granted the Defendant until July 13, 2007, to file his Answer. The Answer was filed on July 16, 2007, after which time the Court conducted several other Scheduling Conferences. At the last Scheduling Conference, which took place on November 27, 2008, discovery deadlines were set, as was a deadline for the filing of a joint pre-trial statement. A two-day trial was set. The Court heard nothing more from the parties until the parties filed their Motion to Approve Stipulation to Resolve Adversary Proceeding on April 29, 2008. The Debtor was the only party to object to the Motion.

Finally, the Court notes that this estate is insolvent.[2] Even if the Trustee were to recover the entire amount requested in her original Complaint, there would be no distribution to the Debtor under 11 U.S.C. § 726(a)(6). Therefore, the Debtor has no real interest in this Adversary Proceeding, and lacks standing to object to any Settlement. However, due to the serious nature of some of the Debtor's allegations, the Court will address his concerns herein.

---

**1.** At this hearing, the Court discussed with Mr. Ollerton the pleadings filed in the case. Mr. Ollerton conceded that the Debtor had assisted him in drafting the pleadings. The Court informed Mr. Ollerton that he was free to proceed as his own counsel, or to retain a licensed attorney, but he could not use the services of a non-lawyer to draft pleadings to be filed with the Court. Mr. Ollerton ultimately chose to retain Mr. Warnicke as his counsel.

**2.** As of May 17, 2007, the Trustee had $106,000 cash on hand after the sale of most of the estate's assets. See Docket Entry No. 118 in Case No. 05-06498. Most of the adversary proceedings involving the Debtor had been resolved at that time, so it is unlikely that the estate's cash has significantly increased. The cash on hand will likely not cover even the administrative claims in this case, let alone the priority and secured claims, which together total more than $4,000,000.

3

## III. Legal Discussion

This Court has wide discretion in granting approval of compromises. In re A & C Properties, 784 F.2d 1377, 1380-81 (9th Cir. 1986). "The law favors compromise and not litigation for its own sake;" when a settlement is reasonable, given the particular circumstances of the case, it should be approved. Id. at 1381. In determining whether to approve a compromise, the court must consider: (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. In re Woodson, 839 F.2d 610, 620 (9th Cir.1988) citing In re A & C Properties, 784 F.2d 1377, *cert. denied sub nom.*, Martin v. Robinson, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986). While objections to the proposed compromise are to be considered by the court, such objections in themselves are not controlling, and the court must also weigh certain factors to determine whether the compromise is in the best interest of the bankruptcy estate. In re America West Airlines, Inc., 214 B.R. 382 (Bankr.D.Ariz. 1997).

In regard to the Settlement Agreement presently before the Court, the Debtor filed the sole Objection. The Debtor has expressed concerns about the Settlement Agreement because the Debtor feels that the claims and allegations on which the Adversary Complaint is based are "without merit, and un-provable." The Debtor alleges that the Defendant, who is his friend, settled with the Trustee only because the Defendant was under economic duress. The Debtor views the Settlement Agreement as "extortion" and, accordingly, believes that it does not meet the criteria set forth in Woodson.

Prior to addressing the Woodson factors, the Court will first turn to the serious matter of the Debtor's allegations that the Defendant has been "extorted" or subjected to another form of economic duress or coercion. Although the Defendant, who resides in Texas, did not appear at the June 17, 2008 hearing on the Settlement Agreement, his counsel appeared on his

4

behalf.[3]  The Court asked the Defendant's counsel to address the issues raised by the Debtor, to determine whether the Defendant truly wished to go forward with the Settlement Agreement. The Defendant's counsel expressed his belief that the Debtor's concerns were unfounded and that the Defendant did wish to move forward with the Settlement Agreement.  He noted that most clients are not particularly happy with settlements.  However, when the cost-benefit analysis of settlement versus litigation is considered, a settlement is the better option in this case, and the one the Defendant, therefore, chose.

The Trustee's counsel then spoke to the issue of "extortion."  He stated that he had filed the Adversary Complaint in good faith, and believed that recovering the transfer would be in the best interests of the estate.  He noted that initially he had difficulty conducting discovery, and thereby determining the strength of the case, due to the Debtor's and Defendant's failure to cooperate with him.  The Defendant is now represented by counsel, so he has an informed legal advisor to assist him in protecting any rights he may have.  Furthermore, once the Defendant obtained counsel, the Trustee's counsel was able to open lines of communication and obtain information and discovery that indicated settlement was appropriate.

In light of the foregoing information, the Court has no doubt that the Defendant has entered into the Settlement Agreement fully informed, and under no economic or other duress or coercion.  The Defendant has had the assistance of capable legal counsel.  Prior to obtaining counsel, the Defendant appeared before the Court pro se, and has demonstrated that he is able to act on his own independent judgment.  The Debtor has presented no evidence of "extortion," and the Court does not find the Debtor's allegations to be meritorious.  The Court

---

**3.**  The Debtor insinuated, at this hearing, that the Court had forced the Defendant to obtain counsel.  As noted in footnote 1, the Court gave the Defendant the choice to retain counsel or to represent himself. The Court did forbid the Defendant from filing pleadings prepared by someone other than an attorney, other than himself, in accordance with this Court's Local Rules and Arizona law generally.  See, e.g., L.R. 2090-2(c).  See also ARIZONA CODE OF JUDICIAL ADMINISTRATION, Part 7, Ch. 2 § 7-208; In re Bankruptcy Petition Preparers who are not Certified Pursuant to the Requirements of the Arizona Supreme Court, 307 B.R. 134 (9th Cir. B.A.P. 2004).

5

will now turn to the Settlement Agreement itself.

The Debtor's belief that the Adversary Complaint is "un-provable" is squarely addressed by the first Woodson factor, under which the Court must examine the probability of success in the litigation. At the June 17, 2008 hearing on the Settlement, the Trustee's counsel stated that the estate initially expected a substantial recovery from the Adversary Proceeding, which was filed in good faith. Later, however, after discovery was conducted, and the Defendant's counsel made various factual and legal arguments to the Trustee's counsel, it appeared to the Trustee's counsel that the estate's recovery would not be as large as was initially believed. Furthermore, to obtain any recovery after a trial on the matter, the Trustee would incur attorneys' fees and costs in litigation, in addition to assuming the risk that after a trial on the merits, the Trustee would recover little or nothing. The Defendant faced similar costs and risks, so the parties agreed to settle.

As to the second Woodson factor, under the terms of the Settlement Agreement, the Defendant will voluntarily pay the amount within ten days of an Order Approving the Settlement. The Trustee did not present any other information on this factor.

The third factor involves an analysis of the complexities of litigation and the expense, inconvenience and delay caused by such litigation. As noted above, the cost of the litigation will likely outweigh the possible recovery. The Woodson factors, particularly this one, essentially focus on the business judgment of the trustee, and whether it makes sense to settle, and whether the settlement is in the best interest of creditors. In this case, the Trustee's counsel presented sound arguments as to why the settlement is appropriate after weighing the costs and risks involved in litigating the claim at issue with the potential increased distribution to creditors as a result of the Settlement Agreement. The Court will not second-guess the Trustee's judgment in this regard.

Finally, the fourth Woodson factor requires the Court to ascertain the interests of creditors with deference to their reasonable opinions. In this case, no creditor has objected to the

6

settlement. The Debtor raised the sole objection. Furthermore, because the estate is insolvent, there is no possibility that there will remain any assets to be returned to the Debtor after distribution. The Debtor has no interest at stake and, therefore, lacks standing to object to the settlement. See, e.g., Kieffer v. Riske, 226 B.R. 204, 208-09 (8th Cir. B.A.P. 1998); In re Rake, 363 B.R. 146, 151 (Bankr. D. Idaho 2007). The Trustee has determined that it is in the best interests of creditors to settle, rather than squander the estate's meager resources on the costs of litigation.

Based on this analysis, the Court finds and concludes that the Settlement Agreement reached between the Plaintiff and Defendant, resolving the disputed claims herein, is both fair and equitable and also is in the best interests of the estate and creditors. See In re A & C Properties, 784 F.2d 1377 (9th Cir. 1986). As stated above, the Court also finds that the Defendant was not the victim of "extortion," but rather entered into the Settlement acting on his own voluntary independent judgment, with the assistance of counsel, and under no economic duress or coercion.

### IV. Conclusion

Based upon the foregoing, the Court concludes that the Motion to Approve the Settlement is GRANTED. The Court will execute a separate order incorporating this Decision

DATED this 16th day of July, 2008.

*[signature]*
Honorable Sarah Sharer Curley
U. S. Bankruptcy Judge

BNC to notice.

7